UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DANIEL JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF PEORIA, SHAWN CURRY,<br>KEITH MCDANIEL, and ROGER MARTIN,<br>and other as-yet unidentified officers,<br><br>    Defendants. | No. 4:16-cv-01054-SLD-JEH |

## ORDER

Before the Court is Defendants' Motion to Dismiss, ECF No. 18. Plaintiff Jackson filed several counts under 42 U.S.C. § 1983 and Illinois state law relating to the five-year term of imprisonment he served in the wake of his ultimately overturned 2011 murder conviction. Defendants move to dismiss all of them.[1] For the following reasons, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[2]

On the evening of August 29, 2009, a shooting in Peoria, Illinois claimed the life of Clifford Harvey, Jr. Just before the shooting, Harvey set out to obtain drugs with Easton Eibeck, who was already high at the time. As the two men were walking, they passed a group of four

---

[1] Defendants did not move to dismiss on any of the underlying *Monell* claims against Defendant City of Peoria on Counts I–VI, except to the extent that the underlying constitutional violation was dismissed. Def.'s Mem. 19. Therefore, where the Court denies the motion to dismiss on the underlying constitutional violation, the *Monell* claim stands as well.

[2] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). Accordingly, the material set forth herein, unless otherwise noted, is based on allegations in the Complaint.

1

men walking in the opposite direction. Eibeck's version of events is as follows: he and Harvey exchanged words with the men, who then surrounded Harvey. One of the men reached for his waistband, and Harvey began to run. Eibeck started running as well, and heard a shot fired behind him, but did not stop.

Peoria police officers responded to a 911 call reporting gunfire and arrived at 10:37pm. A dozen officers canvassed the scene, and located a screwdriver, a lighter, a cellphone near Harvey's body, and a bullet fragment in his clothing. No murder weapon, shell casings, or other physical evidence was recovered. Defendant Shawn Curry arrived on the scene at approximately 10:45pm. A bystander took him to the home of Kevin Eggers and Angela Espedal, where Harvey had been staying. Curry interviewed Eggers and Espedal, both of whom told Curry that Eibeck informed them that Harvey had been shot but that he could not identify the shooter. Curry interviewed Eibeck on August 30, 2009, and Eibeck confirmed that he could only give a general description and was not able to positively identify the shooter or anyone in the group. Eibeck relayed to Curry that he was a heroin addict in need of treatment.

## Defendants' Investigation

In February 2010, Eibeck was arrested on an unrelated charge and taken to Peoria County Jail. Curry arranged to have him questioned at the Peoria Police Department the next day. Defendants Curry and Roger Martin tried to get Eibeck to point to Plaintiff Jackson as the shooter. Defendants conducted a photo line-up that attempted to manipulate Eibeck into identifying Jackson as Harvey's shooter. Eibeck stated that the officers seemed "hellbent on [Jackson]" and that the photo of Jackson was "pushed down [his] throat."

Eibeck eventually selected the photo of Jackson, despite cautioning police that he was not 100% sure of the identification. He noted that at the time of the shooting it was dark, he was

high, and the events happened quickly. Curry produced a police report containing false information about the circumstances of the interview and regarding the strength of Eibeck's identification.

### Defendants' Interrogation of Jackson

Curry issued a "49 memo" asserting that probable cause existed to arrest Jackson, and other Peoria Police officers then arrested Jackson without a warrant. Jackson was arrested on March 2, 2010. He was interrogated by Curry and Defendant Keith McDaniel for approximately two hours, in a session that was recorded on videotape. Jackson had consumed alcohol and drugs prior to his arrest and felt woozy during the interrogation. He repeatedly denied being present at the shooting. The officers denied his requests to phone his mother and grandmother.

Curry initially instructed Jackson that he could invoke his *Miranda* rights by remaining silent, and Jackson did so for approximately thirty minutes. Curry and McDaniel continued to speak to Jackson. McDaniel told Jackson that if he remained silent, he would still be charged with the murder, and that a jury would be biased against him because he was a young black man. Curry and McDaniel lied repeatedly to Jackson about the evidence, minimized the seriousness of the shooting, and fed Jackson details of the crime. They suggested to Jackson that Harvey threatened him with the screwdriver and that Jackson shot in self-defense.

During the interrogation, Jackson's speech was slurred and he appeared uncoordinated. Two hours and fifteen minutes into the interrogation, Jackson collapsed onto the floor and the officers were unable to revive him. An ambulance was dispatched to the scene, and Jackson told paramedics that he was dizzy and that his head had been hurting for a couple of hours. Jackson was transported to a hospital for treatment.

**Jackson's Conviction**

Jackson was charged with first degree murder. The State introduced as evidence Eibeck's identification and excerpts from the videotaped interrogation. Jackson was convicted and sentenced to sixty five years in prison. Jackson maintained his innocence and sought appeal. The Illinois Appellate Court reversed the conviction, finding that there had been no probable cause to arrest Jackson. On June 28, 2015, the Peoria County State's Attorney dismissed all charges against Jackson.

In this civil suit, Jackson brings the following claims against the City of Peoria and the involved officers: Count I: 42 U.S.C. § 1983 – Due Process; Count II: 42 U.S.C. § 1983 – Coerced and False Confession (Fifth Amendment); Count III: 42 U.S.C. § 1983 – Coerced and False Confession (Fourteenth Amendment); Count IV: 42 U.S.C. § 1983 – Federal Malicious Prosecution; Count V: 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights; Count VI: 42 U.S.C. § 1983 – Failure to Intervene; Count VII: State Law Malicious Prosecution; Count VIII: State Law Intentional Infliction of Emotional Distress; Count IX: State Law – Willful and Wanton Conduct; Count X – State Law Civil Conspiracy; Count XI: State Law Respondeat Superior; and Count XII: State Law Indemnification. *See* Compl.

**DISCUSSION**

I. **Legal Standard on a Motion to Dismiss**

In ruling on a defendant's motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In doing so, the facts set forth in the complaint are viewed "in the light most favorable to the nonmoving party." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint "must actually suggest that the plaintiff has a right to relief." *Arnett*, 658 F.3d at 752 (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). In evaluating a complaint, a court first determines which allegations, if any, are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). "Bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim are "conclusory and not entitled to be assumed to be true." *Id*. at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court then considers the claims remaining and determines whether these "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. To do so, they must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnett*, 658 F.3d at 752 (quoting *Iqbal*, 556 U.S. at 678). In other words, the plaintiff's allegations must demonstrate that the claim "is plausible, rather than merely speculative." *Tomayo*, 526 F.3d at 1083. The court may take judicial notice of matters of public record for purposes of deciding a motion to dismiss without converting the motion into a motion for summary judgment. *See Palay v. United States*, 349 F.3d 418, 425, n. 5 (7th Cir.2003).

For a § 1983 claim to survive a motion to dismiss, a plaintiff's allegation must allege plausibly, under the pleading standards of *Iqbal*, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). For conspiracy liability, a plaintiff must show agreement amongst defendants to deprive plaintiff of his rights, and that he was actually deprived of those rights by overt acts taken in furtherance of the conspiracy. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

## II. Coerced Confession Under the Fifth and Fourteenth Amendments[3]

Defendants argue that qualified immunity protects the Defendant Officers from suit against Jackson's claims of coerced confession under both the Fifth and Fourteenth Amendments. Def.'s Mem.Supp. Mot. Dismiss ("Def.'s Mem") 5–12, ECF No. 19.

### i. Qualified Immunity

"Qualified immunity is an entitlement to avoid trial." *Jones v. Clark*, 630 F.3d 677, 679 (7th Cir. 2011). It shields officials, including police officers, from harassment, distraction, and liability when they perform their duties reasonably, while ensuring that public officials are held accountable when they exercise power irresponsibly. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). An "official's right to immunity turns on two questions: first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right, and second, whether the federal right at issue was clearly established at the time that the alleged violation occurred." *Jones*, 630 F.3d at 680 (citing *Pearson*, 555 U.S. at 129). If the plaintiff cannot establish that the facts, "taken in the light most favorable to [him], show that the defendant violated a constitutional right," summary judgment for the defendant is appropriate. *Jewett v. Anders*, 521 F.3d 818, 822–223 (7th Cir. 2008). District courts may exercise their discretion in determining which prong of the qualified immunity analysis to decide first. *Pearson*, 555 U.S. at 236.

The plaintiff can meet his burden of showing that a right is clearly established by showing "that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have

---

[3] Defendants move to dismiss Defendant Officer Martin from the counts involving the coerced confession, since Jackson has not alleged any facts indicating that Martin was involved in the interrogation in any capacity. *Duncan*, 644 F.2d at 655 ("[A] plaintiff must establish defendant's personal responsibility for the claimed deprivation of a constitutional right."). Jackson objects to the dismissal but fails to sufficiently plead Martin's involvement. Pl.'s Resp. 13 n.4. Counts II and III are dismissed against Martin.

6

believed that it would not violate clearly established rights.'" *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001), and *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999)). "Although it is not necessary that a prior case address the precise factual situation confronting the officer, the unlawfulness of the officer's action should be clear in light of pre-existing law." *Jones by Jones v. Webb*, 45 F.3d 178, 183 (7th Cir. 1995) (quoting *Estate of Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir. 1993)).

The 12(b)(6) motion to dismiss is not often the appropriate vehicle for dismissal based on qualified immunity because the defense "usually depends on the facts of the case," and "'the plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.'" *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).

### ii. Coerced Confession Under the Fifth Amendment (Count II)

A Fifth Amendment violation occurs when the government introduces a coerced statement into evidence at a hearing or at trial. *Chavez v. Martinez*, 538 U.S. 760, 767 (2003); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1024 (7th Cir. 2006). "A confession is voluntary if, in the totality of circumstances, it is the 'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir. 2004) (quoting *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). Such deceptive interrogation tactics include "a false promise of lenience," *United States v. Stadfeld*, 689 F.3d 705, 709 (7th Cir. 2012), misrepresentations, "distorting the alternatives among which the person under interrogation is being asked to choose," and "threats that prevent a person from thinking clearly, or that (much like misrepresentations) exaggerate the consequences of one of the

7

alternatives—not confessing." *Weidner v. Thieret*, 866 F.2d 958, 963–64 (7th Cir. 1989). However, an officer may "actively mislead" a suspect to obtain a confession, particularly while "playing on [the interview subject's] guilt and fears, . . . so long as a rational decision remains possible." *United States v. Ceballos*, 302 F.3d 679, 694–95.

The Court's analysis of coercion should consider the facts "from the perspective of a reasonable person in the position of the suspect." *Huerta*, 239 F.3d at 871. In considering whether the conduct of officers in extracting a confession was coercive, the Seventh Circuit considers the following relevant factors: "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *Id.*

The inquiry into coercion looks at the totality of factors, and Jackson has alleged that he was intoxicated and physically unwell, and subject to lies, psychological intimidation, and false promises of lenience Pl.'s Resp. Mot. Dismiss ("Pl.'s Resp.") 9, ECF No. 22.

Jackson alleges that he was under the influence of both drugs and alcohol, and intoxicated to the point of losing consciousness and being hospitalized. By the time the interrogation occurred in 2009, it was well settled that an individual under the influence of mind-altering substances might be especially susceptible to coercion. *Huerta*, 239 F.3d at 871 (listing relevant factors in determining whether coercion took place, the Court found that "[n]arcotics, alcohol, and fatigue also may be considerations in a particular case."); *United States v. Snodgrass*, 635 F.3d 324, 328 (7th Cir. 2011) (specifically finding that Snodgrass was not

coerced because during the interview he was not "mentally impaired or under the influence of drugs or alcohol").[4]

Additionally, the long soliloquy delivered by Defendant Officer McDaniel during the course of the investigation "exaggerated the consequences" of not confessing, *Weidner*, 866 F.2d at 964, and raises serious doubts about Jackson's ability to rationally consider his options during the interrogation. Jackson alleges that McDaniel spoke at length about Jackson's inability to receive a fair trial because of the jury's inevitable prejudice against young black men like him. *See Barrera v. Young*, 794 F.2d 1264, 1267 (7th Cir. 1986) ("The 'voluntariness' of a confession depends not only on whether it was a result of free choice but also on whether the interrogator's techniques 'are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means.'") A law enforcement officer—using his authority as a representative of the criminal justice system—drew Jackson's attention to the ways in which a trial would be unfair to him whether he was guilty or not, based solely on his race. Allegedly, McDaniel did not just allude to racial disparities in the justice system at large, but pointed to the specific fact that a jury in Peoria likely would be all-white and biased against Jackson, such that his only good option was to confess. Such behavior, if true, could be sufficient to allege "psychological intimidation" meant to overcome a subject's free will and rationality.

---

[4] Defendants argue that the video shows a coherent Jackson who does not appear to be under the influence, and urges the Court to make the same inference. Def.'s Mem. 8–9. It will not. Though the Court may review attachments to pleadings when they are "critical to the [plaintiff's] complaint and are referred to in it," *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), the Court will decline, at the motion to dismiss stage, to review the video for the purpose of making factual determinations about the Defendant's alleged psychological intimidation tactics and Jackson's demeanor. *Cf. Hyung Seok Koh v. Graf*, No. 11–cv–02605, 2013 WL 5348326, at *8–10 (N.D. Ill. Sep. 24, 2013) (considering whether to view a video of an interrogation at the motion to dismiss stage, the Court was hesitant to view the video but found that because the allegations of misconduct – yelling, nonconsensual touching, displaying a gun – would be readily ascertainable in the video such that they could clearly contradict the allegations in the complaint, and the Court would view the video in the light most favorable to the plaintiff as non-movant).

Defendants argue that qualified immunity is appropriate at the motion to dismiss stage because the "inherently coercive environment" of an interrogation makes it difficult for officers to know which tactics might lead to a finding of unconstitutionality, and that "police are largely in the dark about the idiosyncrasies of the human condition" that might make an individual susceptible to coercion. Def.s' Mem. 6. Yet while there is no "talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question [arises]," *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973) the facts, as Jackson has alleged them, suggest that the officers plausibly could have known they were violating the Fifth Amendment.

Qualified immunity is not appropriate at this stage because Jackson plausibly alleges a violation of clearly established constitutional rights. The motion to dismiss is denied as to Count II, the Fifth Amendment claim of coerced confession.

### iii. Coerced Confession Under the Fourteenth Amendment (Count III)

Defendants argue that Jackson's Fourteenth Amendment claim for coerced confession is time barred[5] and that the allegations otherwise do not meet the standard required to state a claim on which relief can be granted. Def.'s Mem. 12.

A violation of the Fourteenth Amendment occurs when police use coercion to achieve a confession: "by virtue of the Due Process Clause 'certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned.'" *Colorado v. Connelly*, 479 U.S. 157,

---

[5] The statute of limitations on a § 1983 claim does not run if the suit is barred under *Heck v. Humphrey*, which disallows a plaintiff from bringing a § 1983 claim that contests the validity of an underlying criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 486–87, (1994). The reversal of a conviction removes the *Heck* bar and marks the accrual of a claim that would have called that conviction into question. *Rodriguez v. Cook Cnty., Ill.*, 664 F.3d 627, 630 (7th Cir. 2011); *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). In Illinois, the statute of limitations on a § 1983 claim is two years. *Id.* Here, the appeals court overturned Jackson's conviction on December 4, 2014. At issue in the claim is the validity of the confession that provided crucial evidence to support Jackon's conviction—the type of claim that would have been barred by *Heck*. Therefore, Jackson had until December 4, 2016 to file his claim, and did so well before that, on February 12, 2016. *See* Compl. The claim was not time barred.

163 (1986) (quoting *Miller v. Fenton*, 474 U.S. 104, 109 (1985)); *see generally Brown v. Mississippi*, 297 U.S. 278 (1936) (enshrining the proposition that physical and psychological torture are revolting to justice, defy substantive due process guarantees, and may not be used to extract convictions). Interrogation tactics that "shock[] the conscience" provide the basis for a due process claim under § 1983. *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). The scope of behavior falling into this category is not simply defined, but the Supreme Court has identified the primary inquiry to be "whether the conduct is 'too close to the rack and the screw,'" *Fox*, 600 F.3d at 841 (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)), such that the conduct is "offensive to human dignity." *Rochin*, 342 U.S. at 174; *see Chavez*, 538 U.S. at 774. On the spectrum of conduct that has been alleged to "shock the conscience," the Supreme Court held that forcing an accused to ingest a solution that would pump his stomach for evidence violated the Constitution, *Rochin*, 342 U.S. at 172, while no violation occurred when officers interrogated a suspect still receiving emergency care for his officer-inflicted gunshot wound, because the officer did not act "with a purpose to harm" the suspect and the questioning tactics did not exacerbate his injury. *Chavez*, 538 U.S. at 775.

Despite lengthy analysis of the Fifth Amendment claim stemming from the same events, Jackson does not point the Court toward an analogous case that suggests the Defendant officers' alleged conduct could rise to the level of conscience-shocking behavior. Pl.'s Resp. 13. The Seventh Circuit recently reiterated that in regard to interrogation tactics, it has identified "no clear-cut analysis to determine what constitutes 'conscience-shocking' conduct . . ." *Gill v. City of Milwaukee*, No. 16-2846, 2017 WL897344, at *4 (7th Cir. Mar. 7, 2017) (quoting *Fox*, 600 F.3d at 841). The Court has not identified case law suggesting that the alleged conduct—including false promises of leniency, feeding the details of the crime, and even suggesting that

11

Jackson inevitably would face a prejudiced jury—rises plausibly to the level of what has been deemed a shock to the conscience. "There is no precedent that places the constitutionality of the detectives' actions beyond debate." *Id.* at *4 (citations omitted), so insofar as Jackson alleges that the circumstances of his interrogation constituted a due process violation under the Fourteenth Amendment, the count is dismissed.

### III. Deprivation of Due Process Under Fifth and Fourteenth Amendments

Jackson alleges that his right to procedural due process was violated in three distinct ways: (1) Defendants committed *Brady* violations (2) Defendants fabricated evidence to use against him and (3) Defendants used unduly suggestive identification procedures.

#### i. *Brady* Violation

Defendants move to dismiss Jackson's *Brady*-based due process claim on the basis that the circumstances of Eibeck's identification were known to Jackson by the time of trial, and therefore the information was not withheld. Def.'s Mem. Supp. Mot. Dismiss 14. Jackson responds that he was still missing "*complete* information" regarding the identification procedures, which left Jackson at a disadvantage at trial. Pl.'s Resp. 15.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court established that "the right to due process and a fair trial" requires that prosecutors must "turn over to the defense all potentially exculpatory evidence," and the obligation extends to police officers as well, when they turn over information to the prosecution. *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir 2007); *Manning v. Miller*, 355 F.3d 1028, 1034 (7th Cir. 2004). To prove a *Brady* violation, a plaintiff must show three elements: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning there is a reasonable probability that the result of the proceeding would have

been different." *Beaman v. Freesmeyer*, 776 F.3d 500, 506 (7th Cir. 2015). Suppression of evidence occurs when "(1) the state failed to disclose known evidence before it was too late for [a defendant] to make use of the evidence; and (2) the evidence was not otherwise available to [a defendant] through the exercise of reasonable diligence." *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014) (quoting *Collier v. Davis*, 301 F.3d 843, 850 (7th Cir. 2002)).

Eibeck testified at both the pre-trial suppression hearing and at Jackson's trial, and provided testimony regarding the manner in which the police directed him toward Jackson's photo. Jackson acknowledges that he learned before the trial that the officers may have used improper identification procedures, but would have preferred to "bolster[]" his attacks on the reliability of the identification with more information on the "full extent of Defendants' misconduct." Pl.'s Resp. 14. Jackson's defense counsel knew about Eibeck's allegations that he was coerced to identify Jackson as the shooter and was able to explore that information in preparation for trial, even moving to suppress the identification. Jackson has not sufficiently alleged that a failure to disclose on the part of any Defendant disabled Jackson from making use of the information. *See Petty*, 754 F.3d at 424.[6]

**ii. Evidence Fabrication**

---

[6] Jackson points to *Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001) to argue that defense counsel could not have discovered the information "contained in [Eibeck's] head," due largely to his heroin addiction, and that therefore the full circumstances of the coerced identification could not have been discovered with reasonable diligence on the part of defense counsel. Pl.'s Resp. 15. *Boss* is inapposite. It dealt with the problem of whether a *Brady* violation has occurred when "counsel could not have reasonably expected a witness to have knowledge" of certain exculpatory evidence because it was outside of the scope of the witness's involvement in the case, and so did not know to inquire about it. *Id.* at 743. On the second day of their criminal trial, the Bosses' defense counsel received a report from the prosecution indicating that a defense witness who was meant to testify solely to corroborate the defendants' alibi had told the prosecution that another individual had bragged around town that he was the true perpetrator of the crime. The Court in *Boss* was concerned that defense counsel would have to pursue "fishing expeditions" with all defense witnesses to comply with the reasonable diligence standard. *Id.* at 741. That situation is not at play here: Eibeck's identification of Harvey as the shooter was the primary reason for his involvement in the case and was the subject of a suppression hearing.

13

"[A] police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). The relevant inquiry is "whether officers 'created evidence that *they knew to be false.*'" *Avery v. City of Milwaukee*, 847 F.3d 433, 439–40 (7th Cir. 2017) (quoting *Petty*, 754 F.3d at 422). As required by all § 1983 claims, the officer's fabrication must cause an injury. *Whitlock*, 682 F.3d at 582 (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 744 (1st Cir. 1980) for the principle that "the existence of a false police report, sitting in a drawer in a police station [does not] by itself deprive[] a person of a right secured by the Constitution and laws."). A plaintiff may "properly allege[] that the act of fabrication caused a harm to [him]" when the fabricated evidence was introduced against him at trial and was instrumental in his conviction. *Id.*

The Seventh Circuit draws an important distinction between claims that allege due process violations via the manufacturing of fabricated evidence against a defendant, versus the coercion of a witness or defendant into giving false statements, which does not violate a defendant's due process rights, "absent a violation of the *Brady* duty to disclose facts about the coercive tactics used to obtain it." *Avery*, 847 F.3d at 439–40 (citing *Petty*, 754 F.3d at 422, for the proposition that "unlike falsified evidence and perjured testimony, [coerced testimony] may turn out to be true"; meanwhile, falsified information never aids a jury, and a conviction based on fabrication "will always violate defendant's right to due process").

Insofar as Jackson's allegations of evidence fabrication encompass the officers' creation of a police report containing the "false account of Eibeck's supposed identification of [Jackson] as the shooter," Pl.'s Resp. 17, he adequately states a claim for a due process violation. The report itself, the admissibility of which Defendants dispute, is not the extent of the fabricated

evidence: Jackson points to a "false account" of the identification procedures and the information secured from Eibeck. Pl.'s Resp. 16. Jackson alleges that this account was presented at trial and was instrumental in securing Jackson's conviction. To the extent that Jackson argues that his confession was "fabricated" because the officers fed him facts and "coerced him to adopt [a false narrative about his involvement]," Pl.'s Resp. 18, those allegations relate to coercion and are discussed *supra*, Section II.ii on Fifth Amendment coerced confession, and *infra*, Section IV, Federal Malicious Prosecution.

### iii. Unduly Suggestive Lineup

Defendant moves to dismiss Jackson's due process claim on the basis of unduly suggestive identification procedures because Jackson has not sufficiently alleged that the procedure deprived him of a fair trial. Def.'s Mem. 18.

Though the Constitution guarantees no particular quality of a photo array, the Fourteenth Amendment right to due process is violated if "unduly suggestive identification techniques are allowed to taint the trial." *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006). In evaluating whether due process was violated, courts should use a totality of the circumstances assessment to determine "whether the identification procedure was unduly suggestive and whether the resulting identification is reliable." *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 109 (1977)). Liability under § 1983 arises only when the plaintiff can show that the "identification techniques made [the] trial unfair." *Id.*

Jackson alleges that the identification made by Eibeck was a crucial piece of evidence at his trial. Eibeck, after initially telling officers the day after the shooting that he could not identify the shooter, then identified Jackson as the shooter at trial after what Jackson alleges was suggestive and coercive behavior on the part of the officers to push him toward identifying

15

Jackson as the shooter. This calls into question the reliability of the identification and the resulting testimony Eibeck provided at trial. The motion to dismiss as to the due process claim stemming from unduly suggestive identification procedures is denied.

## IV. Federal Malicious Prosecution

Jackson alleges that he was deprived of his Fourth Amendment rights when he was seized without probable cause and improperly subjected to judicial proceedings. Compl. 13. Defendants' only argument in favor of dismissal is that the Seventh Circuit does not recognize a federal malicious prosecution claim under § 1983. Def.'s Mem. 19.

The Supreme Court recently clarified that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet, Ill.*, No. 14-9496, 2017 WL 1050976, at *7 (U.S. Mar. 21, 2017). The Court left the Seventh Circuit to determine on remand what the elements of a fourth amendment claim alleging unlawful post-arrest, pretrial detention might be. *Id.* Most other circuits already recognize a Fourth Amendment malicious prosecution claim and require a plaintiff to show that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013).

In *Bianchi v. McQueen*, the plaintiffs alleged a Fourth Amendment false arrest claim, which the Seventh Circuit characterized as a malicious prosecution claim because plaintiffs were arrested "pursuant to formal legal process" (warrants issued pursuant to indictments). *Bianchi*, 818 F.3d at 322. The court acknowledged that it had net yet recognized the cause of action but concluded that even if it "were cognizable as a Fourth Amendment violation, [defendants] would still be entitled to qualified immunity [b]ecause the plaintiffs were immediately released on bond and were neither seized nor detained [and] suffered no Fourth Amendment injury." *Id.* at 323.

16

Drawing from these cases, and dependent on the development of Seventh Circuit case law for such claims, a plaintiff in the Seventh Circuit can likely allege a Fourth Amendment malicious prosecution/post-arrest pretrial detention claim if defendant (1) caused (2) a prolonged seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.

Here, Jackson alleges that the defendant officers acted without probable cause to arrest him, based only on the weak, coerced identification provided by Eibeck, and that they continued to pursue prosecution of Jackson on the basis of fabricated reports and by coercing Jackson's false statements of guilt. Compl. 13. Jackson's warrantless arrest via "49 memo" was carried out without any independent evidence other than Eibeck's identification tying him to the murder, and Jackson was ultimately subject to pretrial detention and prosecution. Further, the causation element has been adequately alleged: when the basis for pretrial detention depends on fabricated evidence of the kind at issue here, the Supreme Court recently clarified that legal process "does not expunge" the underlying lack of probable cause for the purpose of stating a claim for a Fourth Amendment violation. *See Manuel*, 2017 WL 1050976, at *6. Lastly, Jackson was taken into custody on March 2, 2010, and did not stand trial until September 2011. Unlike the short time periods the Seventh Circuit has previously indicated do not make out a cognizable deprivation of liberty, Jackson was in pretrial detention for eighteen months. *See Bianchi*, 818 F.3d at 323.

Defendants' motion to dismiss Count IV is denied.

### IV. Conspiracy to Deprive Constitutional Rights

Defendants move to dismiss the claim for conspiracy to deprive Jackson of his constitutional rights solely on the basis that it is derivative to the underlying constitutional

violations, arguing that they cannot stand if the underlying violation is not pled. Def.'s Mem. 19. Jackson successfully pleads his claims under the Fourth, Fifth, and Fourteenth Amendments, so the conspiracy allegations remain.

## V. Failure to Intervene

For the same reasons *supra* Section IV, Conspiracy to Deprive Civil Rights, the failure to intervene allegation, Count VI, is not dismissed.

## VI. State Law Malicious Prosecution

Defendants have made no arguments regarding why the state law malicious prosecution claim should be dismissed, other than a general request that the Court refuse to exercise pendent jurisdiction over Jackson's state law claims. Def.'s Mem. 19. The claim survives the motion to dismiss.

## VIII. State Law Intentional Infliction of Emotional Distress ("IIED")

Jackson alleges that he suffered severe emotional distress resulting from extreme and outrageous behavior of the officers, who acted in abuse of power. Compl. 16. Defendants argue that the claim is time-barred. Def.'s Mem. 20.

An Illinois IIED claim is subject to the one-year statute of limitations. 745 ILCS 10/8-101. The Seventh Circuit, in *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013) rejected the plaintiff's argument that her claim continued to accrue as long as officers who had wrongfully arrested her on the basis of unreliable evidence did not dismiss the indictment. Jackson argues only that "Defendants' ongoing misconduct" should provide the basis for a timely IIED claim, but does not allege any facts suggesting that a new, independent IIED claim could have arisen after the fabrication of the report and Jackson's unlawful arrest on March 2, 2010. Pl.'s Resp. 22. *See id.* (finding no newly accrued IIED claim when plaintiff's allegations lacked showing that the "detectives' ongoing failure to alert the prosecutor to the potential shortcomings in the

18

evidence was motivated by freshly formed intention to cause emotional distress"). The Court sees no reason to depart from settled law in finding the claim untimely, and Count VIII is dismissed.

## IX. Willful and Wanton Conduct

Though the parties agree that willful and wanton conduct is not its own independent tort, Jackson correctly argues that he must allege willful and wanton conduct on the part of defendants for his state law claims to stand in the face of Illinois' immunity statute. *See* 745 ILCS 10/2-20; *McDowell v. Village of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014).

## X. State Law Civil Conspiracy

Defendants have not moved to dismiss the state law conspiracy claim alleged in Count X outside of the general request that the Court refuse to exercise pendent jurisdiction over Jackson's state law claims. Def.'s Mem. 19. The claim survives the motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 18, is GRANTED in part and DENIED in part. Counts III and VIII are dismissed, as is the *Brady* violation allegation in Count I. Counts II and III are dismissed as to Defendant Martin. The motion is DENIED in regard to the remaining Counts.

Entered March 31, 2017.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
